NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED LINEN WHOLESALE, L.L.C., | : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | : | **OPINION** |
| v. | : | Civil Action No. 06-CV-5934 (DMC) |
| THE NORTHWEST COMPANY, | : | |
| Defendant. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motions by Defendant, The Northwest Company ("Northwest") for summary judgment and to preclude consideration of communications barred by the dead man's statute; and upon motion by Plaintiff, United Linen Wholesale, L.L.C.'s ("ULW") for a continuance of Northwest's summary judgment motion pursuant to Fed. R. Civ. P. 56(f). After carefully considering the submissions of the parties, and based upon the following, it is the finding of the Court that ULW's motion for a continuance of Northwest's motion for summary judgment is **denied**; Northwest's motion to preclude consideration of communications barred by the dead man's statute is **granted**; and Northwest's motion for summary judgment is **denied**.

I. **BACKGROUND**[1]

A. **Factual Background**

Northwest is a North Carolina corporation which manufactures home textile products, such as licensed comforters, pillows, throws and bedding bearing recognized brands, images, and logos. Northwest's corporate offices are located in Roslyn, New York. ULW is a limited liability company

_____

[1] The facts set forth in this Opinion are taken from the Parties' respective submissions.

located in Elmwood Park, New Jersey.  ULW is in the business of obtaining and selling licensed

items, such as those manufactured by Northwest.

In April 2006, Northwest began selling ULW comforters bearing marks, images, and logos

owned by the National Football League ("NFL") and Disney.  ULW claims that it had an agreement

with Northwest which designated ULW as the exclusive distributor of NFL and Disney licensed

comforters to the Hispanic market in all states of the United States other than Texas for the year

2006.  After the exchange of several shipments of merchandise and payments, an issue arose

regarding exclusivity.

**B.      Procedural History**

On December 12, 2006, ULW filed a Complaint alleging causes of action for breach of

contract, breach of the covenant of good faith and fair dealing, material misrepresentation, breach

of fiduciary duty, unjust enrichment, breach of contract/constructive discharge and intentional

infliction of emotional distress.

The Clerk of the Court entered default against Northwest on January 22, 2007.  ULW filed

a motion for entry of default judgment on January 26, 2007.  Northwest filed a cross-motion to

dismiss for lack of personal jurisdiction or, in the alternative, to grant Northwest leave to file an

Answer out of time.  On July 26, 2007, this Court denied Northwest's motion to dismiss but granted

Northwest's motion to vacate default.

On August 18, 2008, Northwest filed a motion for summary judgment.  On January 8, 2009,

Northwest filed a motion to preclude consideration of communications barred by the dead man's

statute.  On January 28, 2009, ULW filed a motion seeking a continuance of Northwest's motion for

summary judgment pursuant to Fed. R. Civ. P. 56(f).

**III.     DISCUSSION**

      **A.     Choice of Law**

A federal court sitting in diversity must determine what state law will apply to the case before it. First, a court sitting in diversity must determine whether there is a conflict between the law of the forum state and the law of other interested states. If there is a conflict, the court must then determine if the law in conflict is substantive or procedural. Simmons v. City of Philadelphia, 947 F.2d 1042, 1085 (3d Cir. 1991). It is well established that the procedural law of the forum state applies in all cases, including cases where jurisdiction is supplemental or based on diversity and "even when a different state's substantive law [] governs." North Bergen Rex Transport, Inc. v. Trailer Leasing Co., 158 N.J. 561, 569 (1999). Therefore, should a court determine that the matter is procedural then the law of the forum state applies. Id. If it is determined that the matter is substantive then the law of the forum state is used to make a choice of law determination. Hammersmith v. TIG Ins. Co., 480 F.3d 220, 226 (3d Cir. 2007). New Jersey law provides that the law of the state with the closest contacts to the dispute governs. Rohm & Haas Co. V. Adco Chemical Co., 689 F.2d 424, 429 (3d Cir. 1982).

The seminal issue in this case is whether the statute of frauds applies. Both New York's and New Jersey's statute of frauds are entirely based on the Uniform Commercial Code (the "UCC") thus, there is no conflict. Defendants have filed a motion seeking to preclude evidence pursuant to New York's or New Jersey's dead man's statute. These statutes are in conflict therefore, the choice of law analysis must continue to the next step. The New York dead man's statute bars verbal or otherwise unsupportable testimony as to any transaction with, or statements by a deceased person offered in support of a claim or defense. NY CPLR § 4519. New Jersey in 1960 eliminated the

3

absolute testimonial bar and replaced it with a duty to establish by clear and convincing proof the claim or defense for which the testimony is offered. See N.J. Stat. Ann. 2A:81-2 (1960). Northwest has provided New York case law holding that dead man's statutes are "substantive [] rather than purely evidentiary." Clark v. Meyer, 188 F. Supp. 2d 416, 419 n.16 (S.D.N.Y. 2002). ULW has not provided any case law directly on point with this issue. Instead, ULW argues that dead man's statutes are procedural because the New Jersey statute involves the application of a heightened burden of proof, and matters pertaining to the burden of proof are regarded as procedural. See Sun Oil Co. v. Wortman, 486 U.S. 717, 728 (1988). This is not persuasive because it is not clear that New Jersey's statute is applicable. The burden of proof issue is not relevant until it is determined which dead man's statute applies. Accepting that application of a dead man's statute is a substantive issue, the next consideration is which state has the greater interest in having its law apply. Rohm, 689 F.2d at 429.

The main factor supporting the application of New Jersey law is that ULW is a New Jersey Corporation. Additionally, ULW alleges that it paid Northwest from an account in New Jersey and Northwest sent communications to ULW in New Jersey. ULW, however, has its principal place of business in New York. The arrangement between the parties was entered into at a meeting in New York. ULW reached out to Northwest and in so doing sent payment to New York, and communicated with Northwest in New York. ULW concedes that it initiated the relationship. The initial overture did not take place in New York but most of the negations did. On balance, New York appears to have a closer relationship to this matter than New Jersey. Therefore, New York law shall govern.

**B.      ULW's Motion for a Continuance**

Fed. R. Civ. P. 56(f) allows courts to continue motions for summary judgment to allow the non-moving party additional time to gather facts needed to oppose the motion.  A court however, should "not delay a case to allow discovery when the discovery sought could have been instituted earlier, especially when there is no reason to believe that it will lead to a denial of the motion."  10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2741 (3rd ed. 1998).  In deciding a motion for a continuance, a court must consider "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not been previously obtained."  San Filippo v. Bongiovanni, 30 F.3d 424, 432 (3d Cir. 1994).  The decision of whether to grant a Fed. R. Civ. P. 56(f) motion lies in the sole discretion of the court.  Id.

**      i.      Timeliness**

ULW argues that its motion for a continuance is timely because new information came to light during a Fed. R. Civ. P. 30(b)(6) deposition that took place after the discovery period had ended.  ULW attempted to followup on the new information gained by obtaining the full names and contact information of three Disney employees.  On three occasions over a two month period, with the last request being made on August 11, 2008, ULW requested information from Northwest.  Northwest never provided the requested information.  ULW eventually obtained contact information for the three Disney employees from Disney.  On three occasions between September 23, 2008 and October 3, 2008, ULW tried to serve the three Disney employees through ABC Process Service Bureau, Inc.  Thereafter, ULW contacted the Honorable Mark Falk, U.S.M.J. to request a conference call between the parties and the Court to discuss depositions of the Disney employees.  A conference call was conducted on December 19, 2008.

Assuming that Northwest did not come forward with information requested by ULW and ULW could not have performed its 30(b)(6) deposition earlier, it still appears that ULW has not vigorously pursued its case.  ULW has not provided any evidence that it has tried take the depositions of the Disney employees or that it has scheduled depositions to take place in the near future.  Moreover, ULW should have reached out to the Court to compel Northwest to answer its requests as apposed to waiting until now to request a continuance.  Furthermore, once ULW became aware that it wanted information from Disney employees, ULW should have moved to reopen discovery at that time, and not several months later.

### ii.      Relevancy of the Information Sought

ULW claims that the information it seeks to obtain through further discovery is relevant because it relates to whether the agreement at issue in this case is a mixed contract; and whether the agreement contemplated the application of the Copyright Act.  ULW further asserts that depositions of the three Disney employees might provide information which would create a genuine issue of material fact precluding summary judgment.

ULW's last relevancy ground is speculative and is insufficient to justify a continuance. ULW's first relevancy argument is without merit because the relationship between the parties as described by ULW primarily involves the sale of goods.  ULW's second relevancy argument is unpersuasive.  At issue in this case is the value of being the only company able to sell products with trademarked and/or copyrighted images on them.  Irrespective of what was contemplated by the agreement, the Copyright Act is clearly implicated.

The information ULW seeks to obtain does not appear to be relevant for the purposes of Northwest's motion for summary judgment.  Based on the untimeliness and the lack of relevancy

of the information that ULW wishes to obtain, ULW has not established grounds to continue

Northwest's motion for summary judgment.  Therefore, ULW's motion to continue Northwest's

motion is **denied**.

C.      **Northwest's Motion for Preclusion In Accordance With the Dead Man's Statute**

New York's dead man's statute, codified at CPLR § 4519, provides:

> Under the trial of an action...a party or person interested in the event...shall not be
> examined as a witness in his own behalf or interest,...concerning a personal
> transaction or communication between the witness and the deceased person...except
> where the executor, administrator, survivor, committee or person so deriving title or
> interest is examined in his own behalf or the testimony of a...deceased person is given
> in evidence, concerning the same transaction or communication.

This statute has been interpreted broadly to encompass "every method by which one person can

derive impressions or information from the conduct, condition, or language of another."  Holcomb

v. Holcomb, 95 N.Y. 316, 325 (1884).  In New York, it is well recognized that CPLR § 4519 is

substantive.  Clark, 188 F.Supp.2d at 419 n.16; Rosenfeld v. Basquiat, 78 F.3d 84, 88 (2d Cir. 1996).

Moreover, a dead man's statute is applied in Federal Court to state law claims, issues, or defenses

through Fed. R. Evid. 601.  Any evidence that is excluded by the dead man's statute for trial

purposes cannot be considered in the determination of a summary judgment motion because of Fed.

R. Civ. P. 56(e).

Northwest argues that application of New York's dead man's statute establishes that ULW

cannot rely on the testimony of its principal, Aref Abuhada, concerning alleged communications or

transactions with Shay Auerbach, who was the 49% owner and Chairman of Northwest.  See Mark

Patterson, Inc. v. Bowie, 661 N.Y.S.2d 709, 711-12 (Sup.Ct.N.Y. Co. 1997) (Finding that the dead

man's statute applies to owners and shareholders of parties to a litigation).

Since Mr. Auerbach died on November 11, 2008, and Mr. Abuhabda is an interested party,

Mr. Abuhabda cannot testify regarding any transactions or conversations he had with Mr. Auerbach where there was no other person present and no other forms of evidence available to substantiate Mr. Abuhabda testimony.  In accordance with Fed. R. Evid. 56(e), this exclusion applies to Northwest's summary judgment motion.  Therefore, Northwest's motion to preclude consideration of transactions or communications barred by the dead man's statute is **granted**.

### D.      Summary Judgment

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  See  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986) (Brennan, J. Dissenting); Fed. R. Civ. P. 56(c).  The moving party bears the burden of showing that there is no genuine issue of fact.  See id.  "This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id.  The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor.  Id. at 322;  see also Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences – including on issues of credibility – in favor of the nonmoving party."  Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

### i.     Applicability of the Statute of Frauds

In relevant part, the New York Uniform Commercial Code ("NYUCC") provides:

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $ 500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

> (a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

> (b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

> (c) with respect to goods for which payment has been made and accepted or which have been received and accepted (Section 2-606).

NYUCC § 2-201.

Northwest correctly argues that its relationship with ULW is one involving the sale of goods.

Northwest argues that the comforter shipments delivered to ULW were for substantially more than

the $500 threshold necessary to trigger the statute of frauds.  ULW argues that its contract with

9

Northwest is one for distribution services or in the alternative is a mixed contract involving distribution services and the sale of goods.

The Court is in agreement with Northwest that the relationship at issue involves the sale of goods of a value greater than $500. ULW claims to have a contract with Northwest which provides ULW with the exclusive right to sell a subset of goods made by Northwest. Northwest argues that the arrangement it had with ULW was to sell ULW a product Northwest alone was licenced to manufacture. Northwest sent comforters to ULW. In return ULW paid Northwest. The fundamental nature of the relationship involves the sale of goods. Therefore, the statute of frauds applies to ULW's claim.

### ii. Applicability of the Copyright Act

The Copyright Act provides that "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a). One element of copyright ownership is the right to control distribution of the copyrighted work. 17 U.S.C. § 106. A grant of an exclusive license in a copyrighted work, including the right to distribute, must be in writing. Papa's-June Music v. McLean, 921 F.Supp. 1154, 1159 (S.D.N.Y. 1996).

ULW argues that the rights transferred to it by Northwest only involve trademarked and not copyrighted works. Northwest argues that many of the artistic representations on the comforters it manufactured and sold to ULW were copyrighted by their owners. The facts of record demonstrate that Northwest acquired the rights to manufacture and distribute comforters with NFL team images and Disney images on them. To the extent any of these images are copyrighted, Northwest acquired

a limited interest in these copyrights.  Both parties concede that Northwest sold comforters to ULW and gave ULW the right to distribute these comforters.  By allowing ULW to sell these comforters, Northwest transferred some of its interest in the copyrighted works to ULW.  Therefore, the Copyright Act, and as a result the statute of fraud provision included in the Act are implicated in this matter.

### iii.    The Writing Requirement

Both the statute of frauds and the Copyright Act require that the contract ULW claims it had with Northwest be in writing.  Northwest concedes that in an e-mail sent on July 1, 2006, Auerbach wrote "[y]ou are the only Company we sell the comforters to outside of the State of Texas.  This is our agreement for the year 2006 and we both hope to enlarge on it for year [sic] 2008 and beyond." In recent years, e-mails that satisfy certain requirements have been found to be sufficient to satisfy the statute of frauds. See e.g. Rosenfeld v. Zerneck, 776 N.Y.S. 2d 458 (Sup. 2004).

Moreover, Northwest admits in its briefs supporting its motion for summary judgment that it had agreed to sell comforters to ULW and only to ULW, for an agreed upon price, incorporated in the arrangement by reference, and that Northest was the only manufacture of the comforters.  This admission might constitute an agreement sufficient to satisfy a statute of frauds exception.  See NYUCC § 2-201(3)(b).

Based on the July 1, 2006, e-mail and other e-mails discussed in the parties' submissions, there is a substantial question of fact as to wether the e-mails sent between the parties together are sufficient to satisfy the statute of frauds and the Copyright Act.  There is also a question of fact concerning Northwest's admissions in their submissions to the Court and whether these admissions satisfy the NYUCC § 2-201(3)(b) exception.  Therefore, Northwest's summary judgment motion is **denied**.

11

**IV.**   **CONCLUSION**

For the reasons stated, it is the finding of the Court that ULW's motion for a continuance of

Northwest's motion for summary judgment is **denied**; Northwest's motion to preclude consideration

of communications barred by the dead man's statute is **granted**; and Northwest's motion for

summary judgment is **denied**.  An appropriate Order accompanies this Opinion.


 S/ Dennis M. Cavanaugh
 Dennis M. Cavanaugh, U.S.D.J.


Date:         March 30, 2009
Orig.:        Clerk
cc:           All Counsel of Record
              Hon. Mark Falk, U.S.M.J.
              File