NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED LINEN WHOLESALE, L.L.C., a New Jersey Corporation, | : : : | |
| Plaintiff, | : : | |
| v. | : : : | Hon. Dennis M. Cavanaugh |
| THE NORTHWEST COMPANY | : : | OPINION |
| Defendant. | : : : | Civil Action No. 2:06-cv-5934(DMC)(MF) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motions *in limine* by United Linen Wholesale, L.L.C. ("Plaintiff") and The Northwest Company ("Defendant"). Plaintiff has filed five motions *in limine*, and Defendants have filed thirteen. This case concerns an agreement between the parties to produce bedding pursuant to Defendant's licensing agreement with the National Football League ("NFL") and the Disney Corporation ("Disney"), that were to be distributed by the Plaintiff to the Hispanic market in the United States. A trial is scheduled to begin on September 28, 2010.

**I. BACKGROUND**

Plaintiff, ULW, is a limited liability company located in Elmwood Park, New Jersey. ULW is in the business of obtaining and selling licensed items such as those manufactured by Northwest, a manufacturer of home textile products with corporate offices located in Roslyn, New York. In April 2006, Northwest began selling ULW comforters bearing marks, images and logos owned by

the NFL and Disney. ULW claims that it had an agreement with Northwest which designated ULW as an exclusive distributor of NFL and Disney licensed comforters to the Hispanic market in all states of the United States other than Texas for the year 2006. After the exchange of several shipments of merchandise and payments, an issue arose regarding exclusivity. On December 12, 2006, ULW commenced this action by filing a complaint.

## II. DISCUSSION

The Court will address each of the motions in turn, although the issues arising out of the March 30, 2009[1] decision of this Court will be addressed last. As the Court writes for the parties, it presumes familiarity with the factual and procedural history of this case. The Court references only the facts and law necessary to its consideration of the motions addressed herein.

## III. PLAINTIFF'S MOTIONS

**1.     Motion to Preclude Evidence or Reference to Country of Origin, Religion or Ethnicity of Witnesses on Behalf of ULW.**

Plaintiff seeks to preclude evidence relating to national origin or ethnicity of parties or witnesses. Absent an unanticipated showing of relevance pursuant to Fed. R. of Evid. 401, this Court will not countenance irrelevant questioning about the racial, ethnic or religious background of any party or witness. If an issue of fact were to arise as to the ability of a party or witness to understand questions put to him at a deposition or at trial because of a language barrier, that might be an issue for the trier of fact to explore. However, it is both unnecessary and premature to rule prospectively on the admissability of evidence that may or may not be proferred at trial. The motion is **granted.**

---

[1] These include the 3rd portion of Plaintiff's motion *in limine*, as well as the 1st, 2nd and 3rd portions of Defendant's motion *in limine*.

2. **Motion to Preclude Defendant from Producing Evidence of Lost Profits Suffered as a result of ULW's Alleged Breach.**

The damages Defendant seeks to recover do not fall into the category of lost profits, since they involve mitigation of Defendant's alleged damages as opposed to a claim for lost profits. As the Defendant states explicitly in their "Memorandum of Law in Opposition to Plaintiff's Motion *in limine*," "Northwest does not seek to recover lost profits." (Page 5). Rather, the damages that Northwest seeks to recover are covered by N.Y.U.C.C. section 2-703 (where the buyer breaches its obligations under an agreement for the sale of goods, "the aggrieved seller may (d) resell and recover damages as hereafter provided (Section 2-706)." This refers to the difference between the contract price and the resale price that the seller was able to find an alternative purchaser for, not to profits that were lost due to a breach. To the extent that this portion of the motion as proposed by the Plaintiff mischaracterizes the damages that Defendant seeks, the motion is **denied.**

3. **Motion that the Court Should Not Take Judicial Notice of the Copyright Registrations of the NFL and Disney Images Used in the Comforters.**

It is certainly within the purview of this Court to judicially notice the existence of copyrights registered by the NFL and Disney if those copyrights have indeed been registered with the U.S. Copyright office. This portion of Plaintiff's motion is **denied**.[2]

4. **Motion to Preclude Proposed Lay Opinion Testimony of Glenn Auerbach**

Fed. R. Evid. 701 provides in relevant part that lay opinion testimony which is (a) "rationally based on the perception of the witness" may be admissable. To preclude such evidence in this case based on the fact that the witness' personal knowledge and perceptions were not fully explored in his

---

[2]This ruling concerns Defendant's 11th point of its motion *in limine* as well.

pre-trial deposition is an extreme and unreasonable measure. Had Plaintiff wished to question Mr. Auerbach at his deposition about his expertise, they were free to do so. If, as Plaintiff claims, Mr. Auerbach lacks sufficient knowledge to offer a lay opinion as to marketing comforters to the Hispanic market, that will be explored before he is allowed to testify at trial, and his personal knowledge and perceptions will need to satisfy the Court pursaunt to Rule 701 at that time. This portion of Plaintiff's motion is **denied.**

## IV. DEFENDANT'S MOTIONS

**1. Motion to Preclude Testimony by Samir Saleh and Thaer Imleh as to Communications with Shay Auerbach Barred by the Dead Man's Statute.**

New York's so-called "Dead Man's Statute," CPLR 4519, "precludes interested parties from testifying in their own behalf against the interest of a decedent as to conversations or transactions that they had with a person now dead." Endervelt v. Slade, 162 Misc. 2d 975, 618 N.Y.S. 2d 520 (N.Y. Supreme Ct., 1994). "In such an action or proceeding fairness requires that one party should not be permitted to give his version of a transaction or communication where the adversary in the controversy is dead; where death silences one, the law will silence the other." In re Erdmann's Estate, 198 Misc. 1087, 98 N.Y.S. 2d. 111 (N.Y. Sur. Ct., 1950).

In this Court's opinion issued on March 30, 2009, it held that private communications between Shay Auerbach, now deceased, and Aref Abuhabda were not admissable pursuant to CPLR 4519 because Mr. Abuhabda was clearly an interested party as understood by the statute.

Mr. Samir Saleh is, according to his deposition testimony (Saleh Tr. 15:15-16:2), a 50% owner of the Plaintiff business, ULW. He is, in every respect, as interested a party as Mr. Abuhabda, and any testimony that he proposes to offer concerning his conversations and transactions with Shay

4

Auerbach would be similarly barred. Mr. Thaer Imleh, on the other hand, although he stood to benefit from the success of ULW's agreement with Northwest, attended meetings with Shay Auerbach in an advisory and speculative capacity. Moreover, the meetings and conversations to which he was privy were attended by several other individuals as well, including one or more sons of Mr. Auerbach who were there in their professional capacities as employees of Northwest. Thus, while Mr. Imleh was on the verge of becoming an interested party, his interest had not yet been established or formalized. Thus, the motion to preclude testimony is **granted** as to Mr. Saleh, and **denied** as to Mr. Imleh, with the understanding that Mr. Imleh may only testify to conversations that can be corroborated, and not to private conversations that he may have had with Mr. Auerbach, Sr.

   2.   **Motion to Preclude Attempted Changes or the Errata Sheet from the Deposition Testimony of Samir Saleh.**

The Court is frankly troubled by the errata sheets submitted by Plaintiff to correct Mr. Saleh's deposition of April 15, 2008. The Third Circuit recently held, with regard to changes in a deposition prior to a motion for summary judgment, that a Court may "refuse to consider proposed substantive changes that materially contradict prior deposition testimony." EBC, Inc. v. Clark Building Systems, Inc., 2010WL3239475. Moreover, Fed. R. Civ. P. 30(e) "is to be used for corrective, and not contradictory, changes." Hambleton Bros. Lumber, Inc. v. Balkin Enterprises, Inc., 397 F. 3d 1217 (9th Circ., 2005). Nonetheless, the changes as detailed on the errata sheets do not quite rise to the level at which the Court would be compelled to disallow them. Accordingly, Defendant's motion is **denied**.

3.   **Motion to Preclude ULW from Presenting Evidence of Non-Contract Claims Including Fraud and Unjust Enrichment.**

As the Court's opinion of March 30, 2009 makes clear, the essence of this case is whether there was an enforceable agreement between the parties pursuant to the Statute of Frauds, and whether the writings, e-mails and circumstances of the case created an enforceable contract. As the Defendant persuasively argues, it is disingenuous to recycle a contract claim and call it unjust enrichment or fraud to protect against the possibility that no viable, enforceable contract will be discerned. As an evidentiary issue, allowing the Plaintiff to argue in the alternative that no contract existed, but fraud and unjust enrichment occurred, might confuse and mislead the trier of the fact. As the Court's opinion makes clear, the issue is a complicated question involving disputed facts relating to the formation and enforceability of a contractual relationship. Thus, this portion of Defendant's motion as to the non-contract claims is **granted.**

4.   **Motion to Prevent Introduction of E-Mails from Non-Parties for the Truth of the Matter Asserted.**

Plaintiff proposes to admit an e-mail from a third party that contains photographs of comforters.(Pl.'s Proposed Trial Ex. P-39) Although Plaintiff raises several creative arguments as to the admissability of this e-mail, none are persuasive. The first, that the photograph should be treated as a present sense impression, and thus as an exception to the hearsay rule pursuant to Fed. R. Evid. 803(c)(1) strains credulity, as does the alternative suggestion that this e-mail is a business record that would be excepted under Fed. R. Evid. 803(c)(6). Moroever, to claim that this e-mail is not intended for the truth of the matter asserted but rather as an "explanation of: (i) United Linen's

belief that the Defendant Northwest breached the contract (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion in Limine, page 26) is not reasonable. Absent a legal basis that demonstrates that this e-mail is anything other than inadmissible hearsay, this portion of the motion to exclude it is **granted.**

5. **Motion to Preclude Plaintiff from Presenting Evidence of Damages due to Lack of Mitigation of Damages.**

The question of whether ULW mitigated its damages in a timely manner is a question of fact. As the Plaintiff persuasively argues, the business decision that may have resulted in less than optimal mitigation may have been regrettable, but it does not amount to Defendant's assertion that ULW utterly failed to mitigate. This factual question must be determined by the trier of fact, and thus this portion of the motion is **denied.**

6. **Motion to Preclude Plaintiff's Evidence of Damages as to NFL Comforters.**

This portion of Defendant's motion is **denied.**

7. **Motion to Preclude Plaintiff from Presenting Evidence of Lost Profits.**

This portion of Defendant's motion is **denied.**[3]

8. **Motion to Preclude Lay Opinion Testimony of Aref Abuhabda.**

As the Court previously explained with regard to the preclusion of the lay opinion testimony of Mr. Glenn Auerbach (see page 4), Fed. R. Evid. 701 provides in relevant part that lay opinion testimony which is (a) "rationally based on the perception of the witness" may be admissible.

---

[3] See Court's opinion as to Defendant's 12th point concerning expert testimony, as it applies with equal force to this part of Defendant's motion *in limine*.

Although Mr. Abuhabda's expertise, based on the limited record of his deposition testimony that has been made available to the Court, seems neither extensive nor probative, if his opinion as a lay expert is proffered at trial, the Court will have the opportunity to satisfy itself as to his knowledge and perceptions. Thus, this portion of Defendant's motion is **denied.**

        **9.**    **Plaintiff Should be Precluded from Presenting Expert Testimony.**

The failure to disclose the names of any expert witnesses that the Plaintiff might have expected to call pursuant to Fed. R. Civ. P. 26(a)(2)(B), and the potential that allowing such witnesses at this late date might surprise and unfairly prejudice the Defendant, is reason enough to exclude them. As Fed. R. Civ. P. 37(c)(1) elaborates, there must be "substantial justification" for not revealing expert witnesses in a timely manner, and the failure must also be "harmless." Since neither condition appears to have been met, this portion of Defendant's motion is **granted.**

        **10.**    **Judicial Notice of the NFL's and Disney's Copyright Registrations.**

As the Court previously stated, it is within the purview of the Court to judicially recognize valid copyrights, and so this portion of the motion is **granted.** The extent to which Northwest transferred all or part of its interest to ULW, and the implication of that transfer under the Copyright Act, will be decided at trial.

        **V.**    **Substantive Issues Raised by Plaintiff's Third and Defendant's First, Second and Third Points in Their Respective Motions In Limine.**

It is not the purpose of this opinion to relitigate issues that were reviewed in the Court's March 30, 2009 opinion, or in the subsequent opinion of August 30, 2009 in response to motions to reconsider. As the Court has clarified repeatedly, the seminal issue in this case involves the Statute of Frauds. As the Court found in dismissing Defendant's motion for summary judgment, this contract

involves the sale of goods, and "therefore the Statute of Frauds applies to ULW's claim." (Page 10, 3/30/09 opinion). What remains for the trier of fact to deduce is, as we previously stated, "whether the e-mails sent between the parties together are sufficient to satisfy the Statute of Frauds and the Copyright Act." (Page 11, 3/30/09 opinion). Despite Defendant's contention that there is no ambiguity, and that the e-mails demonstrate with certainty that no agreement existed, the Court once again concludes that this is an issue of fact. As to the Copyright Act's Statute of Frauds that this Court found to be applicable, ULW will *not* be permitted, as a matter of law, to present parol evidence intended to strengthen its claim that certain e-mails satisfy the Copyright Act's Statute of Frauds. Defendant mischaracterizes the Court's opinion as concluding that the writings Plaintiff seeks to rely on are ambiguous. Rather, the question of whether the writings were sufficient in both form and substance is one for the trier of fact to ascertain. The Court reiterates that the alleged agreement is governed by New York law, both in terms of the application of N.Y.U.C.C. section 2-201, and of CPLR 4519, New York's Dead Man's Statute.

Accordingly, portions of both Plaintiff's and Defendant's motions *in limine* as they pertain to the substantive issues of this case are both **granted** and **denied** in accord with the Court's opinion of March 30, 2009 which established both the law of the case and the triable issues of fact.

### VI. Conclusion

For the foregoing reasons, Plaintiff's motion *in limine* is **denied** in part and **granted** in part, and Defendant's motion *in limine* is **denied** in part and **granted** in part.

        S/ Dennis M. Cavanaugh
        Dennis M. Cavanaugh, U.S.D.J.

Date: September 13, 2010
cc: Counsel of Record
    The Honorable Joseph A. Dickson, U.S.M.J.
    File